# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 17, 2013

## KENNETH MILLER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3535     Cheryl Blackburn, Judge**

_____

**No. M2012-01781-CCA-R3-PC - Filed May 20, 2013**

_____

The petitioner, Kenneth Miller, appeals the denial of his petition for post-conviction relief from his Davidson County Criminal Court jury convictions of conspiracy to deliver 300 grams or more of cocaine, delivery of 300 grams or more of cocaine, and possession with intent to deliver 300 grams or more of cocaine. In this appeal, he contends that he was denied the effective assistance of counsel at trial. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Kenneth Miller.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In May 2008, a Davidson County Criminal Court jury convicted the defendant of conspiracy to deliver 300 grams or more of cocaine, delivery of 300 grams or more of cocaine, and possession with intent to deliver 300 grams or more of cocaine for his role in a March 24, 2006 drug deal. This court summarized the evidence presented at the petitioner's trial as follows:

Agent Shelly Smitherman, with the Tennessee Bureau of

Investigation ("TBI"), testified that she was the agent in charge of the investigation involving [the petitioner and co-defendants], which began in December 2005. . . .

Through intercepting . . . phone calls, it was determined that a drug deal was to take place on March 24, 2006, at the Rivergate Mall. The [petitioner] was to deliver a kilogram ("kilo") of cocaine to an unidentified individual coming from Kentucky. . . . At 11:34 a.m. on this day, the [petitioner] phoned [a co-defendant] and asked him to "come and drop it off." TBI Special Agent Steve Talley testified that Kavares Davis ("Davis") arrived at the [petitioner's] apartment at 1:34 p.m.

. . .

Around 6:30 p.m., officers observed the [petitioner] leave his apartment in his black Chevrolet Impala, heading toward the Rivergate area. When he arrived at the mall, the [petitioner] went inside the food court area and purchased some cookies. He received a call . . . and then returned to his vehicle. The [petitioner] drove to the food court entrance, and a man got inside the vehicle. They drove around to the other side of the mall and parked near a green Pontiac Grand Am with Kentucky tags. Detective Herbert Kajihara, with the Twentieth Judicial Drug Task Force, saw the man who had been in the [the petitioner's] car walk back toward the mall. After the [petitioner] left, Det. Kajihara continued to observe the Kentucky vehicle. He then saw the same man exit the mall, along with another male and a female juvenile, and get inside the car. The individuals were carrying packages.

Officers followed the green Pontiac to a gas station. At the gas station, an individual later identified as Ned Wayne Thompson ("Thompson"), got out of the vehicle and placed something that looked like a bag in the trunk. When Thompson left the gas station, the vehicle proceeded onto Interstate 65.... The State did not want to compromise the wiretap investigation, so the officers proceeded under the auspice that they were stopping the individuals for a traffic violation, and they obtained probable cause to search the vehicle due to a K-9 alert. Hidden

behind carpeting inside the trunk, officers discovered two separately packaged bricks of cocaine, weighing approximately two kilograms.

. . . During the search of the [petitioner's] residence, police recovered: one kilo of cocaine from the kitchen; 124.5 grams of cocaine found inside a shoe box in the bathroom; $13,000 in cash from the safe; a notebook with drug ledgers, including names; some nine millimeter rounds for a handgun; and "gunk cans" containing cocaine. Officers also found items used to prepare the cocaine for resale--digital scales, a "kilo press," plastic baggies, and a "cutting agent" used to break down cocaine. . . .

Kavares Davis, initially a co-defendant in this case, testified that he had entered a guilty plea to possession of .5 grams or more of cocaine and received an eight-year sentence under the terms of the agreement. The [petitioner] supplied him with cocaine at the time of his March 2006 arrest and had done so "off and on" for two or three years. . . .

Davis went to the [petitioner's] apartment on the evening of March 23, 2006. The [co-defendant] Turner was already there; he had brought three bricks or kilos of cocaine for the [petitioner], which were sitting on the table. . . .

Later [the next] day, the [petitioner] asked Davis to follow him to Rivergate Mall to meet Thompson, aka "Kentucky." . . .

Previously, on March 10, 2006, Agent Smitherman saw Davis place a trash bag in the dumpster of the [petitioner's] apartment complex. Agent Smitherman pulled the trash and found three empty plastic "kilo wrappers," rubber gloves, a "cutting agent," and a sheet of paper showing a drug ledger.

*State v. Kenneth Miller and Ray Junior Turner*, No. M2008-02267-CCA-R3-CD, slip op. at 2-4 (Tenn. Crim. App., Nashville, Apr. 22, 2010). This court affirmed the petitioner's convictions and accompanying 120-year sentence, *see id.*, slip op. at 1, and our supreme denied permission to appeal, *see State v. Kenneth Miller et al.*, No. M2008-02267-

SC-R11-CD (Tenn. Oct. 18, 2010).

On September 19, 2011, the petitioner filed a timely, pro se petition for post-conviction relief alleging, among other things, that he was denied the effective assistance of counsel at trial. Following the appointment of counsel, the petitioner filed an amended petition for post-conviction relief condensing his claim that he was deprived of the effective assistance of counsel into specific claims that his trial counsel performed deficiently by failing to adequately communicate with the petitioner the "nature and consequences of trial decisions," failing to consult with the petitioner regarding pretrial motions, and failing to include the trial court's denial of his motion to suppress as an issue in his motion for new trial.

At the November 16, 2012 evidentiary hearing, the petitioner testified that trial counsel met with him only once outside court during his pretrial incarceration. That single meeting, he said, took place two days before trial and lasted for less than one hour. He said that he was unable to discuss with counsel any of the relevant details of his case. The petitioner said that he never spoke with counsel via telephone and that counsel failed to reply to the seven letters that the petitioner wrote to him during the pendency of his case. The petitioner said that counsel's only written response came after the petitioner wrote a letter to the Board of Professional Responsibility to complain that he "was running out of time and . . . needed documents for the supreme court."

The petitioner also testified that trial counsel failed to file a motion to suppress the fruits of the search of his residence on grounds that the search warrant was defective. He stated that counsel told him that the motion would not be filed because counsel did not see any merit to the claim. The petitioner said that counsel did file a motion to suppress evidence obtained via wiretap but failed to preserve the denial of that motion for appellate review.

The petitioner claimed that he asked trial counsel to subpoena surveillance video from Rivergate Mall and that, although he promised to "look into it," counsel failed to obtain the footage.

The petitioner insisted that trial counsel completely failed to prepare for trial. The petitioner conceded that trial counsel discussed with him his right to testify, but trial counsel told him that "it wouldn't look good for [the petitioner] to testify." The petitioner said that he wanted to testify and that he communicated to trial counsel his desire to testify, but trial counsel told him that he "shouldn't."

The petitioner claimed that trial counsel failed to subpoena witnesses that he wanted to testify on his behalf, including Robin McDaniels, Rochelle Esaw, Lamanz

-4-

McDaniels, Kevin Davis, and Deantha Robinson. He said that most of the witnesses would be "character witnesses" but that Kevin Davis could have provided evidence relevant to the issues at trial.

The petitioner also claimed that his trial counsel performed deficiently at the sentencing hearing by failing to ask the petitioner questions about his employment and criminal history. The defendant said that counsel also performed deficiently by failing to prepare him to testify at the sentencing hearing. The petitioner said that he arranged for witnesses to appear at the sentencing hearing rather than leaving that task to trial counsel. He said that despite his securing the attendance of the witnesses, counsel failed to call them to testify.

During cross-examination, the petitioner conceded that following his conviction of the three Class A felonies in this case, he was convicted in another court of facilitation of second degree murder for his role in murdering a person he believed had double crossed him in a drug conspiracy.

The petitioner insisted that the surveillance footage from Rivergate Mall would have showed that he did not deliver anything to Mr. Thompson. He conceded, however, that he did not know whether Rivergate Mall had working surveillance cameras on the night of the drug transaction. When asked what his testimony would have been had he been called to testify at trial, the petitioner stated simply, "I would have told them exactly what happened." He added, however, that he would have admitted to the jury that the cocaine belonged to him and that the ledgers discovered in his apartment were used to keep track of "[s]ome drug money, some working money." The defendant claimed that he was not actually in the business of selling drugs but was instead "being a broker" and that he would have explained that role to the jury.

The petitioner testified that he wanted trial counsel to subpoena witnesses to establish that Mr. Davis "is a liar." He said that his fiancée "would [have] explained the surveillance tapes of The Cove Apartments at that time, how long you keep them, I guess how long they were staying." He claimed that surveillance video from the apartments "would have explained everything that happened, the times and stuff like that." The defendant admitted, "Surveillance cameras would have showed [sic] Mr. Turner bring the kilo of cocaine to my house."

The petitioner conceded that "nobody didn't force" him to testify at the sentencing hearing and that, instead, counsel "asked [him] to come to the stand and explain . . . what was in the safe."

-5-

Upon questioning by the court, the petitioner acknowledged that counsel did not prevent him from testifying at trial but instead told the petitioner "that it wouldn't be . . . good for the jury to hear [his] side of the story." The petitioner also conceded that the trial court asked the petitioner at trial if it was his decision not to testify and that he had responded in the affirmative. He insisted, however, that he "put [his] head down and hesitated" when answering the court's questions during the *Momon* colloquy. The petitioner also admitted that he signed a written waiver of his right to testify.

The petitioner acknowledged that surveillance video from Rivergate Mall would have confirmed the testimony of the officers. He nevertheless asserted, "It would prove my theory that how could this have happened? If they would have played the tapes of Mr. Turner coming to my residence, which I don't know, again, why he didn't play it, they would show still pictures of him coming and leaving."

The petitioner contended that the search warrant for his residence was fatally flawed because the affidavit failed to establish a nexus between his residence and the sale of drugs. He admitted that trial counsel filed a motion to suppress evidence seized via wiretap but claimed that counsel failed to "raise the necessity" issue in his motion. When confronted by the State with the trial court's order denying the motion to suppress, which clearly addressed the necessity issue, the petitioner claimed that he had only received a copy of the order in the days prior to the evidentiary hearing.

As regards counsel's conduct of the sentencing hearing, the petitioner said that "[b]asically" he was dissatisfied with the sentence he received.

Trial counsel testified that although he could not recall the precise number of meetings he had with the petitioner, he "felt comfortable going to trial." Counsel said that he could not recall if he responded to the petitioner's written communications, saying, "We communicated a lot through his fianceé. She would call and kind of be the go between." With regard to the petitioner's claim that counsel failed to subpoena witnesses, counsel said, "I don't remember him giving me the name of anybody whose testimony would have been either admissible or useful at trial."

Counsel testified that he "rarely recommend[s] that a defendant take the stand for various reasons, for no other reason they're trying to match wits with an experienced trained prosecutor and they usually don't fair well in that match up." He said that "[i]n this case, there simply wasn't anything that . . . [the petitioner] could say that was going to help his case." He testified that he nevertheless "made clear ultimately it was his call, he could testify if he wanted to." Counsel said that he did not recall the petitioner's expressing a desire to testify.

Counsel testified that he contacted Rivergate Mall concerning the surveillance video from the night of the drug transaction and learned that "there was things that either been taped over or not retained." He said that he did not attempt to obtain surveillance video from The Cove Apartments because "the police had photographs of Mr. Thompson coming and going to those apartments."

Counsel testified that he did not pursue a motion to suppress evidence seized pursuant to the search warrant executed at the defendant's residence because he did not see any merit in the motion. He explained that evidence police had seized from the defendant's trash "would have satisfied [a] magistrate to issue a search warrant" for the defendant's residence.

Regarding the sentencing hearing, trial counsel recalled that the petitioner "wanted to get on the stand because he had a big problem with the inventory of what was taken out of the safe did not include some documents." He said that the petitioner "wanted the opportunity to explain that . . . he had legitimate employment and he hadn't been just a professional criminal."

Upon questioning by the court, counsel recalled that the defendant had surveillance equipment monitoring his residence at the time of the offense but did not provide counsel with any video footage.

At the conclusion of the hearing, the post-conviction court took the petition under advisement. In its written order denying post-conviction relief, the court deemed the petitioner's claim that trial counsel failed to adequately meet and communicate with him "incredulous." The court added, "[N]ot only does this Court credit Trial Counsel's testimony that he investigated and communicated with the Petitioner about the case, but Petitioner was present at substantive hearings where he heard the State's evidence against him." The court determined that the petitioner did not establish that trial counsel performed deficiently by failing to subpoena certain witnesses because the petitioner did not present those witnesses at the evidentiary hearing. The court similarly concluded that "[b]y not articulating what he would have said as his defense, Petitioner has failed to establish by clear and convincing evidence that he was prejudiced by not testifying at trial." The court also specifically credited trial counsel's testimony that although he recommended that the petitioner not testify, he advised the petitioner that the decision was the petitioner's to make. The court noted that the written waiver signed by the petitioner, upon which the petitioner had written "refuse to testify" next to his signature, confirmed that the petitioner knew he had the right to testify and voluntarily elected not to do so.

In this appeal, the petitioner asserts that he was denied the effective assistance

of counsel, claiming that his counsel performed deficiently by failing to adequately prepare for trial, failing to subpoena witnesses, failing to acquire and review video footage, failing to adequately communicate to him his right to testify, and failing to file a motion to suppress based upon alleged infirmities in the search warrant executed at the petitioner's residence. The State contends that the petitioner failed to establish by clear and convincing evidence that his trial counsel performed deficiently.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A.§ 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn.1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App.1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact.

*Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v.. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The evidence does not preponderate against the findings of the post-conviction court. Although the petitioner contends that counsel failed to adequately prepare for trial, the post-conviction court specifically accredited counsel's testimony that he had investigated the case and was fully prepared to proceed with the trial. The court deemed the petitioner's testimony to the contrary "incredulous."

As to the petitioner's claim that trial counsel performed deficiently by failing to acquire and review video footage, the record establishes that trial counsel attempted to obtain the footage, but it had been destroyed. More importantly, the petitioner testified that the surveillance video would have confirmed the testimony of police.

The petitioner similarly failed to establish that trial counsel failed to adequately communicate to him his right to testify. The petitioner testified that counsel advised him that he had the right to testify but counseled him against taking the stand. Such an action does not equate to deficient performance, particularly considering that the petitioner testified at the evidentiary hearing that, had he taken the stand at trial, he would have admitted ownership of the cocaine and his role as a "broker" of illegal drug deals. Moreover, as the post-conviction court pointed out, the petitioner signed a written waiver of the right to testify after a thorough *Momon* colloquy.

The petitioner failed to establish that trial counsel performed deficiently by refusing to file a motion to suppress evidence obtained pursuant to the search warrant executed at the petitioner's residence because counsel's accredited testimony established that such a motion would have been without merit.

Finally, the petitioner failed to establish that trial counsel performed deficiently by failing to subpoena witnesses by failing himself to present those witnesses at the evidentiary hearing. "When a [post-conviction] petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). If he fails to do so, he generally fails to establish ineffective assistance of counsel. *Id.* The post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. *Id.*; *see also Wade v. State*, 914 S.W.2d 97, 102 (Tenn. Crim. App. 1995).

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE